WICKENS v OAKWOOD HEALTHCARE SYSTEM

Docket No. 221927. Submitted July 19, 2000, at Detroit. Decided August 29, 2000, at 9:10 A.M. Leave to appeal granted, 463 Mich 907.

Sandra J. and David Wickens brought an action in the Wayne Circuit Court against Oakwood Healthcare System and others, alleging medical malpractice relating to the diagnosis and treatment of Sandra Wickens' cancer and seeking damages for loss of an opportunity to survive and loss of an opportunity to achieve a better result. The defendants moved for a directed verdict on the claim of loss of an opportunity to survive, arguing that the plaintiffs failed to comply with the requirement of MCL 600.2912a(2); MSA 27A.2912(1)(2) that they prove that the alleged lost opportunity to survive was greater than fifty percent because the testimony of the plaintiffs' expert witness established that the difference between the opportunity to survive before the alleged malpractice and the opportunity to survive after the alleged malpractice was less than fifty percent. The court, Edward M. Thomas, J., directed a verdict in favor of the defendants with respect to the claim of loss of an opportunity to survive as well as the claim of loss of an opportunity to achieve a better result. The plaintiffs appealed.

The Court of Appeals *held*:

MCL 600.2912a(2); MSA 27A.2912(1)(2) provides that in an action alleging medical malpractice, the plaintiff has the burden of proving that the plaintiff suffered an injury that more probably than not was proximately caused by the negligence of the defendant. The statute further provides that the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than fifty percent. The statute requires a plaintiff seeking recovery for loss of an opportunity to survive or an opportunity to achieve a better result to show that, had the defendant not been negligent, there was a greater than fifty percent chance of survival or a better result. The statute does not support the loss of opportunity calculation propounded by the defendants and accepted by the trial court. The trial court therefore erred in directing a verdict in favor of the defendants on the claim of loss of opportunity to survive and further erred in not allowing the case to proceed to trial on the claim of loss of oppor-

tunity to achieve a better result. The latter claim was not contested by the defendants in their motion for a directed verdict.

Reversed and remanded.

NEGLIGENCE — MEDICAL MALPRACTICE — LOSS OF OPPORTUNITY TO SURVIVE — LOSS OF OPPORTUNITY TO ACHIEVE BETTER RESULT.

A medical malpractice plaintiff seeking to recover for loss of an opportunity to survive or an opportunity to achieve a better result must prove that, had the defendant not been negligent, there was a greater than fifty percent chance of survival or a better result (MCL 600.2912a[2]; MSA 27A.2912[1][2]).

*Lopatin, Miller, Freedman, Bluestone, Herskovic & Domol* (by *Barbara H. Goldman* and *Richard E. Shaw*), for the plaintiffs.

*Willmarth, Tanoury, Ramar, Corbet, Garves & Shaw* (by *Anthony J. Paradiso* and *Elizabeth L. Sokol*), for the defendants.

Before: HOOD, P.J., and SAWYER and CAVANAGH, JJ.

CAVANAGH, J. In this medical malpractice action, plaintiffs, Sandra J. and David Wickens appeal as of right from the July 13, 1999, directed verdict in favor of defendants. We reverse and remand.

On September 18, 1997, plaintiffs filed suit alleging that defendants failed to exercise due care in the treatment and care of plaintiff Sandra J. Wickens (hereinafter Wickens) by failing to properly and timely diagnose Wickens' cancer. Specifically, plaintiffs alleged that defendants' failure to timely diagnose Wickens' cancer resulted in a poorer prognosis of cure and long-term survival, the need for more invasive medical intervention, and undue pain and suffering, and medical expenses.

On June 14, 1999, plaintiffs' expert witness, David Schapira, MD, was deposed by both parties. The deposition was referenced as a trial deposition to be used

in lieu of Dr. Schapira's appearance at trial. Dr. Schapira opined that after Wickens' May 1996 diagnosis she had a ten-year survival rate of fifteen percent. He stated that had Wickens' cancer been diagnosed in April 1995, her ten-year survival rate would have been seventy percent if her cancer involved only one lymph node, and fifty-five percent if it involved three lymph nodes. On cross-examination, Dr. Schapira stated the following with respect to the lymph nodes:

> Q. Okay, I want to understand your testimony about the lymph nodes. Your opinion that if a diagnosis was made in April of '99, the status of her cancer, April of '95.
>
> A. Right.
>
> Q. Would have involved possibly one to three—
>
> A. Right.
>
> Q.—nodes. Based on the way you have talked about it would it be a fair characterization as to the number of nodes that it's equally likely that it was one or three? You just can't say?
>
> A. Yes. In fact, I might even say the trend might be towards two or three as opposed to one. I already sort of ruled out none.

On the basis of Dr. Schapira's testimony, defendants filed a motion for a directed verdict. Defendants argued that given Dr. Schapira's alternative possible theories, Wickens' lost opportunity to survive was between fifty-five and forty percent. Defendants arrived at this range by subtracting Wickens' actual fifteen percent ten-year survival rate from the ten-year survival rate Wickens would have had if her cancer had been diagnosed in April 1995 (seventy percent with one lymph node involved and fifty-five percent with three lymph nodes involved). Defendants argued that, given Dr. Schapira's opinion that it was

more likely than not that Wickens had more than one lymph node involved at the time of the alleged failure to diagnose in April 1995, plaintiffs could not prove that Wickens lost greater than a fifty percent opportunity to survive as required by statute.

At the motion proceeding, defendants contended that because Dr. Schapira could not testify that Wickens had suffered a loss of opportunity to survive amounting to greater than fifty percent, plaintiffs were unable to satisfy the requirements of MCL 600.2912a(2); MSA 27A.2912(1)(2). Plaintiffs argued that subsection 2912a(2) did not require that the computed lost opportunity be in excess of fifty percent, but, rather, only that the initial opportunity to survive be in excess of fifty percent. The trial court agreed with defendants and granted their motion for a directed verdict.

The question at issue in this case is whether the circuit court erred in granting defendants' motion for a directed verdict after holding that plaintiffs failed to meet the requirements of MCL 600.2912a(2); MSA 27A.2912(1)(2) because Wickens' lost opportunity to survive, measured as the difference between the opportunity if no negligence had occurred and the opportunity after the negligence occurred, was not greater than fifty percent. A trial court's ruling with respect to a motion for a directed verdict is reviewed de novo on appeal. *Thomas v McGinnis*, 239 Mich App 636, 643; 609 NW2d 222 (2000). In reviewing the trial court's ruling, this Court views the evidence presented up to the time of the motion in the light most favorable to the nonmoving party, grants that party every reasonable inference, and resolves any conflict in the evidence in that party's favor to decide

whether a question of fact existed. *Id.* at 643-644. A directed verdict is appropriate only when no factual questions exist on which reasonable minds could differ. *Id.* at 644. Neither the trial court nor this Court may substitute its judgment for that of the jury. *Hunt v Freeman,* 217 Mich App 92, 99; 550 NW2d 817 (1996). Moreover, directed verdicts are viewed with disfavor in negligence cases. *Id.* Statutory interpretation is a question of law that is also reviewed de novo on appeal. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n,* 456 Mich 590, 610; 575 NW2d 751 (1998).

The primary purpose of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc,* 456 Mich 511, 515; 573 NW2d 611 (1998). When determining the intent of the Legislature, this Court must first look to the specific language of the statute. *People v Borchard-Ruhland,* 460 Mich 278, 284; 597 NW2d 1 (1999). If the plain and ordinary meaning of the statute's language is clear, judicial construction is inappropriate. *Id.* However, if reasonable minds can differ regarding the statute's meaning, judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees' Retirement System,* 458 Mich 326, 332; 582 NW2d 767 (1998). With these principles in mind, we look at the language of the statute governing a plaintiff's recovery for loss of an opportunity to survive in a malpractice action, MCL 600.2912a(2); MSA 27A.2912(1)(2).

MCL 600.2912a(2); MSA 27A.2912(1)(2) governs the burden of proof requirements with respect to medical malpractice actions and provides:

> In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. *In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.* [Emphasis added.]

The question before this Court is whether the statute allows for recovery when the initial opportunity to survive before the alleged malpractice is greater than fifty percent, as argued by plaintiffs, or, rather, if the statute only allows for recovery when the difference between the opportunity to survive before and after the alleged malpractice is greater than fifty percent, as defendants contend. We agree with plaintiffs' interpretation.

In *Falcon v Memorial Hosp*, 436 Mich 443; 462 NW2d 44 (1990), rev'd in part on other grounds 437 Mich 926 (1991), superseded by statute as stated in *Weymers v Khera*, 454 Mich 639; 563 NW2d 647 (1997), the plaintiff suffered from a fatal amniotic fluid embolism during the birth of her child. The plaintiff's expert witness stated that had an intravenous line been connected to the plaintiff before the onset of the embolism, the plaintiff would have had a 37.5 percent chance of survival. *Falcon, supra* at 454-455. The Supreme Court held that the loss of a 37.5 percent chance of living was actionable under Michigan law. *Id.* at 470. In 1993, however, the Legislature amended MCL 600.2912a; MSA 27A.2912(1) by adding subsection 2. The amendment was a rejection of *Falcon* and the lost opportunity doctrine discussed in that case. *Weymers, supra* at 649.

In *Weymers, supra* at 650-651, the Supreme Court discussed *Falcon* and the lost opportunity doctrine. The Court noted, "Stated another way, the lost opportunity doctrine permits a plaintiff to maintain an action for malpractice when the malpractice denied the plaintiff an opportunity to avoid the injury, even where the opportunity was fifty percent or less." *Id.* at 648, n 13. The Court stated that there are three alternative approaches to the lost opportunity doctrine: (1) the pure lost chance approach, (2) the proportional approach, and (3) the substantial possibility approach. *Id.* at 650. The Court further explained that each approach lowers the standard of causation and allows a plaintiff to recover without establishing cause in fact. *Id.* The Court stated the following with respect to the substantial possibility approach:

> The last approach, the substantial possibility approach, was adopted by this Court in *Falcon* for wrongful death cases. It also is a variation of the pure lost chance approach. Under this approach, the plaintiff must show that there is a substantial possibility that the defendant's negligence caused his injury. See *Falcon, supra* at 469. It is unclear what constitutes a "substantial possibility." See *id.* at 470 (holding that a 37.5 percent chance of survival was substantial, but refusing to state what constitutes a threshold showing of substantial). It is clear, however, that it does not have to be more than fifty percent. *Id.* Thus, the substantial possibility approach is identical to the other approaches to the extent that each approach allows a plaintiff to recover for his injury *even though it was more likely than not that he would have suffered the injury if the defendant had not been negligent.* [*Weymers, supra* at 651 (emphasis added).]

By requiring plaintiffs in a malpractice claim to prove that "the opportunity was greater than 50%"

before recovering for loss of an opportunity to survive, MCL 600.2912a(2); MSA 27A.2912(1)(2), the Legislature rejected the lost opportunity doctrine that allowed a plaintiff to recover even though it was more probable than not that the plaintiff would not have survived even if there had been no negligence. See *Weymers, supra* at 649, 651. Therefore, we agree with plaintiffs that MCL 600.2912a(2); MSA 27A.2912(1)(2) requires plaintiffs in medical malpractice actions seeking recovery for loss of an opportunity to survive or an opportunity to achieve a better result to show that, had the defendant not been negligent, there was a greater than fifty percent chance of survival or a better result.

We note that our interpretation of the language at issue is consistent with this Court's recent opinion in *Theisen v Knake*, 236 Mich App 249; 599 NW2d 777 (1999). The plaintiff in that case, as the representative of her deceased husband's estate, filed a medical malpractice claim alleging in part that the defendants failed to timely diagnose the decedent's cancer and that the decedent was not immediately afforded aggressive treatment that may have prolonged his life. *Id.* at 251. The trial court granted the defendants summary disposition pursuant to MCR 2.116(C)(8) because the plaintiff did not allege a valid medical malpractice claim. *Id.* at 252. This Court affirmed in part and reversed in part. *Id.* at 260. In discussing whether the plaintiff alleged damages that could have been recovered by the decedent had he lived, this Court stated:

> We also note that plaintiff failed to properly plead that the decedent would have been entitled to collect damages for loss of opportunity to prolong his life. MCL

600.2912a(2); MSA 27A.2912(1)(2) states that a plaintiff cannot recover for the loss of an opportunity to achieve a better result unless the opportunity was greater than fifty percent. Plaintiff here did not plead that had the cancer been diagnosed in January, it would be more likely than not that the decedent's life would have been prolonged or the cancer controlled. [*Id.* at 259-260.]

Plaintiffs' expert in this case testified that Wickens would have had a ten-year survival rate of fifty-five to seventy percent if her cancer had been diagnosed in April 1995, rather than May 1996. Therefore, plaintiffs properly submitted evidence that, had there been no negligence by defendants, Wickens would have had a greater than fifty percent chance of survival and the trial court erred in granting defendants' motion for a directed verdict.

Plaintiffs further argue that the trial court erred in not allowing this case to proceed to trial on their claim that, as a result of defendants' negligence, Wickens was deprived of the opportunity for a better result. We agree. Pursuant to MCR 2.515, a "party may move for a directed verdict at the close of the evidence offered by an opponent. The motion must state specific grounds in support of the motion." See also *Garabedian v William Beaumont Hosp*, 208 Mich App 473, 475; 528 NW2d 809 (1995). Thus, the trial court erred in dismissing plaintiffs' entire cause of action without affording plaintiffs the opportunity to present their case at trial. Furthermore, the trial court's dismissal of plaintiffs' entire cause of action was erroneous because defendants merely discussed plaintiffs' claim of loss of opportunity to survive in their motion for a directed verdict. See MCR 2.515; *Garabedian, supra* at 475.

We reverse the trial court's order granting defendants a directed verdict and remand for further action consistent with this opinion. We do not retain jurisdiction.