**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 24, 2001**

SANDRA J. WICKENS and DAVID WICKENS,

    Plaintiff-Appellees,

and

BLUE CROSS/BLUE SHIELD,

    Intervening Plaintiff,

v                       No. 117731

OAKWOOD HEALTHCARE SYSTEM, an
assumed name for OAKWOOD
HEALTHCARE, INC., BELLEVILLE
HEALTH CARE CENTER, an assumed
name for OAKWOOD HEALTHCARE
INC., DR. CHRISTOPHER PABIAN
and OAKWOOD HEALTHCARE CENTER-
CANTON, an assumed name for
OAKWOOD HEALTHCARE, INC.,

    Defendants-Appellants,

and

DR. PATRICIA NESTER,

    Defendant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

The trial court directed a verdict in this medical malpractice case in defendants' favor on the basis that plaintiff's claim was barred by MCL 600.2912a(2), which precludes recovery for "loss of an opportunity to survive" unless the "opportunity was greater than 50%." We hold that a living person may not recover for loss of an opportunity to survive, and that plaintiff's claim is therefore barred to the extent that it is based on such loss of opportunity. We further hold that the trial court nevertheless erred in dismissing plaintiff's case in its entirety, because she has made additional claims that are independent of her claim for loss of an opportunity to survive. Accordingly, we reverse in part and vacate in part the opinion of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

## I.  FACTS AND PROCEEDINGS

Defendant Oakwood Healthcare System operates an outpatient medical clinic where plaintiff Sandra Wickens[1] consulted defendant Dr. Christopher Pabian regarding a lump in her right breast. Dr. Pabian referred plaintiff for a mammogram that Oakwood personnel administered and interpreted in April 1995. The interpreter reported that the breast tissue had abnormalities, but that they were not cause for alarm because of plaintiff's age, forty-eight, and her breast

---

[1]Plaintiff David Wickens' claim is derivative in nature. For the sake of simplicity, we refer to Sandra Wickens as "plaintiff."

2

tissue density.  She was told to get a repeat mammogram in six months.

In November 1995, plaintiff tried to get the repeat mammogram, but Oakwood personnel incorrectly told her that her insurance would not pay for a second mammogram within twelve months.  Plaintiff waited the additional six months and had another mammogram in May 1996, when the interpreter spotted a mass in the right breast and recommended a biopsy.  The biopsy, performed two weeks later, revealed a malignancy.

On May 29, 1996, plaintiff underwent a mastectomy to remove her right breast and the adjacent lymph nodes.  The malignant lump in her breast measured about six centimeters in diameter.  Nine of the thirteen lymph nodes contained malignant tissue, indicating a substantial probability that the cancer had spread.  Plaintiff underwent postsurgery chemotherapy and radiation treatments to minimize any chance of spreading.

In January 1997, plaintiff consulted doctors about a lump in her left breast.  Although no malignancy was detected, plaintiff underwent a mastectomy to remove her left breast. That was followed with chemotherapy and radiation treatments.

Plaintiff filed this medical malpractice suit in September 1997, alleging that the one-year delay in diagnosing her cancer constituted medical malpractice by the defendants. She alleged that the defendants' malpractice had caused her to suffer a poorer prognosis of cure or long-term survival, a reduction in the quality of life and life expectancy, the need to undergo more radical intervention than would have been

necessary a year earlier, and pain and suffering.

Both parties deposed plaintiff's expert, Dr. David Schapira, an oncologist. Dr. Schapira testified that the malignant lump in plaintiff's right breast would most likely have measured less than two centimeters in April 1995; that at that time fewer than nine of plaintiff's lymph nodes, probably between one and three, would have been affected by the cancer; and that it was generally regarded that appropriate treatment for a cancerous condition of that type would consist of a lumpectomy and radiation therapy, rather than a mastectomy. Moreover, according to Dr. Schapira, plaintiff's probability of living ten years after the 1996 diagnosis was fifteen percent. If plaintiff's breast cancer had been diagnosed in April 1995, she would have had (1) a seventy percent chance of surviving ten years if the cancer involved only one lymph node, or (2) a fifty-five percent chance of surviving ten years if the cancer involved three lymph nodes. On cross-examination, Dr. Schapira opined that plaintiff's cancer had likely affected two or three lymph nodes in 1995.

Defendants filed a motion in limine for a directed verdict, arguing that according to Dr. Schapira's testimony, plaintiff could not meet the requirements of MCL 600.2912a(2). Section 2912a(2) provides:

> In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.

4

Defendants argued that Dr. Schapira's testimony showed that any malpractice by defendants reduced plaintiff's probability of surviving ten years by forty percent.[2]  Because defendants calculated plaintiff's loss at only forty percent, they contended that she therefore could not prove that she lost a greater than fifty percent opportunity to survive, as required by § 2912a(2).

The trial court agreed and granted defendants' motion, dismissing plaintiff's entire case.

The Court of Appeals reversed, holding that § 2912a(2) only requires that the plaintiff demonstrate that had the defendant not been negligent, there was a greater than fifty percent opportunity to survive.[3]  Additionally, the Court of Appeals held that plaintiff satisfied § 2912a(2) by presenting expert testimony that she would have had a fifty-five to seventy percent chance of surviving ten years if her cancer had been diagnosed in April 1995.  The panel further ruled that the trial court should not have dismissed plaintiff's case in its entirety:

> Plaintiffs further argue that the trial court erred in not allowing this case to proceed to trial on their claim that, as a result of defendants' negligence, Wickens was deprived of the opportunity for a better result.  We agree.  Pursuant to MCR 2.515, a "party may move for a directed verdict at the close of the evidence offered by an opponent.  The motion must state specific grounds in support

---

[2]Defendants arrived at forty percent by subtracting the May 1996 ten-year survival rate of fifteen percent from the April 1995 rate of fifty-five percent, given Dr. Schapira's opinion that the cancer had likely affected two to three lymph nodes in 1995.

[3]242 Mich App 385; 619 NW2d 7 (2000).

of the motion." . . . Thus, the trial court erred in dismissing plaintiffs' entire cause of action without affording plaintiffs the opportunity to present their case at trial. Furthermore, the trial court's dismissal of plaintiffs' entire cause of action was erroneous because defendants merely discussed plaintiffs' claim for loss of opportunity to survive in their motion for directed verdict. [242 Mich App 393.]

We granted defendants' application for leave to appeal, directing the parties to brief the issue whether a living plaintiff can bring a cause of action for loss of an opportunity to survive when the claimed injury is a reduction in her projected chances of long-term survival.[4]

## II. STANDARD OF REVIEW

Before trial, defendants filed a motion in limine for directed verdict to dismiss plaintiff's claims for loss of an opportunity to survive and loss of an opportunity to achieve a better result. At the hearing on the motion, however, defendants referred to the motion as "defendants['] motion for summary disposition, directed verdict." The trial court granted the motion for defendants, on the basis of defendants' interpretation of § 2912a(2). Because MCR 2.515 states that "[a] party may move for a directed verdict at the close of the evidence offered by an opponent[,]" we find defendants' characterization of the motion as a directed verdict at the pretrial stage incorrect. Motions for summary disposition are brought at this stage, and we therefore treat defendants motion as a motion for summary disposition. This Court

_____

[4]463 Mich 907 (2000). The order continued the stay of proceedings in the Wayne Circuit Court that we had previously ordered on October 20, 2000.

6

reviews a trial court's decision to grant summary disposition de novo. *Sewell v Southfield Pub Schs*, 456 Mich 670, 674; 576 NW2d 153 (1998). Similarly, questions of statutory interpretation are reviewed de novo. *In re MCI Telecommunications*, 460 Mich 396, 413; 596 NW2d 164 (1999).

### III. ANALYSIS

#### A. A LIVING PLAINTIFF MAY NOT RECOVER FOR LOSS OF AN OPPORTUNITY TO SURVIVE

Plaintiff contends that she can recover for the reduction in her chances of survival caused by the delayed diagnosis as a claim for loss of an opportunity to survive under § 2912a(2). We reject plaintiff's contention that a living plaintiff may recover for a loss of an opportunity to survive under § 2912a(2) because it is contrary to the Legislature's intent, as evidenced by the statute's plain language.

The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992).

The first sentence of § 2912a(2) provides, "In an action

7

alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." The plain language of the statute, therefore, expressly limits recovery to injuries that have already been suffered and more probably than not were caused by the defendant's malpractice. Thus, plaintiff can only recover for a present injury, not for a potential future injury. Plaintiff claims that a living plaintiff who suffers a reduction in chances of long-term survival because of medical malpractice may have a cause of action for loss of an opportunity to survive under the statute. The testimony that plaintiff's chances of surviving for a ten-year period decreased, however, is evidence of a *potential future injury*—death—which is not an injury *already suffered*, as required by the plain language of the statute. Thus, a loss of an opportunity to survive claim only encompasses injuries already suffered, which clearly limits recovery to situations where death has already occurred. Because the evidence concerning the reduction in her chances of survival over a ten-year period is relevant *only* to her potential, future death, the living plaintiff in this case may not recover for this "loss of opportunity."

### B. The Trial Court Erred in Dismissing Plaintiff's Entire Case

Plaintiff alleged in her complaint that defendants' negligent one-year delay in diagnosing her breast cancer caused past and future damages including, inter alia, the need

8

for more invasive medical treatments, emotional trauma, and pain and suffering. Defendants sought a "directed verdict" on a theory that plaintiff's claim was precluded by subsection 2912a(2). In support of their motion, defendants relied solely on the uncontested expert testimony that the one-year delay in plaintiff's diagnosis and treatment caused her ten-year-survival rate to be reduced from fifty-five percent to fifteen percent.

The trial court erred in dismissing plaintiff's entire case on the ground that it was barred by application of subsection 2912a(2). The ten-year-survival-rate statistics say nothing about plaintiff's chances of avoiding the *other* injuries she allegedly suffered, such as (1) the more invasive medical treatments caused by the one-year delay in her diagnosis, (2) the emotional trauma attributable to her unnecessarily worsened physical condition, and (3) the pain and suffering attributable to her unnecessarily worsened physical condition. Because of these alleged injuries, the trial court should not have dismissed plaintiff's case in its entirety on the basis of subsection 2912a(2).

In light of our determination that a living plaintiff may not recover for loss of an opportunity to survive and that plaintiff pleaded a cause of action for her injuries from the more invasive medical procedures she incurred on account of the alleged negligent delay in diagnosis, it was unnecessary for the lower courts to have addressed whether plaintiff had a cause of action solely on the basis of the reduction in her ten-year survival rate. Accordingly, we vacate that portion

9

of the Court of Appeals opinion.

## IV. Conclusion

In light of the plain language of MCL 600.2912a(2), which allows recovery only for injuries that have already been suffered, we conclude that a living plaintiff may not recover for loss of an opportunity to survive on the basis of a decrease in her chances of long-term survival. We further conclude that, although plaintiff may not recover for loss of an opportunity to survive, the trial court improperly dismissed her remaining claims, which are not premised upon her decreased chances of long-term survival. Accordingly, we reverse in part and vacate in part the opinion of the Court of Appeals and remand plaintiff's case to the trial court for further proceedings consistent with this opinion.

CORRIGAN, C.J., and TAYLOR and MARKMAN, JJ., concurred with YOUNG, J.

10

SANDRA J. WICKENS and DAVID WICKENS,

    Plaintiff-Appellees,

and                            No. 117731

BLUE CROSS/BLUE SHIELD,

    Intervening Plaintiff,

v

OAKWOOD HEALTHCARE SYSTEM, an
assumed name for OAKWOOD
HEALTHCARE, INC., BELLEVILLE
HEALTH CARE CENTER, an assumed
name for OAKWOOD HEALTHCARE
INC., DR. CHRISTOPHER PABIAN
and OAKWOOD HEALTHCARE CENTER-
CANTON, an assumed name for
OAKWOOD HEALTHCARE, INC.,

    Defendants-Appellants,

and

DR. PATRICIA NESTER,

    Defendant.
_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I concur with the majority's holding that a living person may not recover for a loss of an opportunity to survive under the plain language of MCL 600.2912a(2). The majority, however, also holds that the evidence concerning plaintiff's

reduced life expectancy is relevant *only* to her potential future death. Thus, the majority fails to address whether plaintiff may recover for injuries suffered as a result of learning of her reduced life expectancy under the statute as a loss of an opportunity to achieve a better result. Because I believe that a living person may recover for injuries suffered as a result of learning of a reduction in life expectancy as a loss of an opportunity to achieve a better result and that the evidence concerning plaintiff's reduced life expectancy is relevant to whether defendant caused these injuries, I respectfully dissent.

Plaintiff asserts she may recover for her reduction in life expectancy as either a claim for loss of an opportunity to survive or loss of an opportunity to achieve a better result under § 2912a(2). I agree with the majority's reasoning that under the plain language of § 2912a(2), a living person may not recover for a loss of an opportunity to survive. However, the statute also provides for an alternative claim, loss of an opportunity to achieve a better result. Thus, I would conclude that a living person may recover for injuries suffered as a result of learning of a reduction in life expectancy under that claim, if there is evidence that the defendant more probably than not caused the injury. I believe plaintiff satisfied this burden.

The first sentence of § 2912a(2) expressly limits recovery to injuries that have already been suffered and more probably than not were caused by defendant's malpractice. Thus, as the majority notes, the plaintiff can only recover

2

for a present injury, not for a potential future injury. Although this precludes plaintiff from asserting a claim for loss of an opportunity to survive, it does not preclude plaintiff from asserting a claim for loss of an opportunity to achieve a better result, as the majority contends. The statute allows for recovery for injuries already suffered. In this case, the injuries already suffered are the pain and suffering, that were generated by the knowledge that plaintiff's chances of living ten years severely decreased. Thus, plaintiff's claim for such injuries already suffered as a result of defendant's malpractice would satisfy the first requirement, that there be a present injury. However, the correct claim is for a loss of an opportunity to achieve a better result. Plaintiff asserted a claim for loss of an opportunity to achieve a better result on the basis of her reduced life expectancy. Therefore, the next question is whether summary disposition on this alternative claim was proper.

The second sentence of § 2912a(2) states that a plaintiff may not recover for a loss of an opportunity to survive or achieve a better result "unless the opportunity was greater than 50%." The statute is clear that the Legislature intended the word "opportunity" in that phrase to mean the opportunity a plaintiff had to survive or achieve a better result, absent any malpractice. Thus, the statute clearly requires that the premalpractice opportunity to survive or achieve a better result must exceed fifty percent for a plaintiff to recover.

3

In this case, plaintiff's expert Dr. Schapira testified that, had plaintiff's cancer been properly diagnosed, her lowest ten-year survival rate percentage would have been fifty-five percent. Regarding plaintiff's injury of undergoing more invasive medical procedures, Dr. Schapira testified that the delayed diagnosis caused the cancer to spread to more lymph nodes, necessitating these procedures. This injury is clearly one hundred percent attributable to defendant's delayed diagnosis. Thus, viewing the evidence in a light most favorable to plaintiff, she submitted evidence that would allow a jury to conclude that her premalpractice opportunity to achieve a better result was greater than fifty percent, and, therefore, summary disposition of that claim was improper.

The next question to address is what damages, if any, plaintiff may recover for a reduction in life expectancy. As this opinion previously discussed, the first sentence of § 2912a(2) limits a plaintiff's recovery to injuries already suffered and that were more probably than not caused by defendant's malpractice. Thus, plaintiff can only recover for a present injury, not for a potential future injury. Plaintiff's injury of having to undergo more radical treatment is a present injury, and, thus, is recoverable under the statute as an injury suffered. The additional injury plaintiff suffered as a result of defendant's malpractice was that her chance to live beyond ten years was severely decreased. The majority asserts that plaintiff's premalpractice chance of surviving ten years, fifty-five

4

percent in this case, is irrelevant to whether the defendant caused the injuries suffered, i.e., pain and suffering, as a result of learning about the reduction in that chance of survival. I disagree. The only way defendant caused plaintiff's secondary injury of pain and suffering from learning of her reduced life expectancy is if defendant caused plaintiff's primary injury, the reduction in plaintiff's life expectancy. The secondary injury, the pain and suffering, will always be one hundred percent attributable to the primary injury, thus, we must make sure defendant caused the primary injury. To ensure defendant more probably than not caused the primary injury and, thus, the resulting secondary injury, plaintiff must prove that the primary injury meets the greater than fifty percent threshold. Evidence supporting the assertion that defendant's negligence more probably than not caused this injury was plaintiff's expert who opined that defendant's failure to timely diagnose plaintiff's breast cancer caused plaintiff's fifty-five percent premalpractice chance to live ten years to decrease to fifteen percent. This evidence, which shows that plaintiff had a better than even chance of living ten years before defendant's malpractice, supports a finding that defendant, *not plaintiff's cancer,* more probably than not caused the injury. Plaintiff, therefore, submitted evidence that would allow a jury to conclude that her premalpractice opportunity to achieve a better result, i.e., to avoid pain and suffering after learning of her reduced life expectancy, was greater than fifty percent, and, therefore, summary disposition of that

5

claim was improper. Thus, I would conclude that the reduction in plaintiff's better than even chance to live ten years is a recoverable injury under the statute; however, the correct claim is for loss of an opportunity to achieve a better result, and plaintiff can only recover for the pain and suffering generated by the knowledge that her chances of living ten years severely decreased.

CONCLUSION

In light of the plain language of MCL 600.2912a(2), I would conclude that a living person may not recover for a reduction in life expectancy as a loss of an opportunity to survive, but may recover for a reduced life expectancy as a loss of an opportunity to achieve a better result. The recovery for a reduction in life expectancy as a loss of an opportunity to achieve a better result claim is not based on the plaintiff's potential future death, but is limited to the emotional damages already suffered. However, to recover for a loss of either an opportunity to survive or achieve a better result, the opportunity, absent any malpractice, must have been greater than fifty percent to ensure that defendant's malpractice more probably than not caused the injury. The Court of Appeals applied this interpretation of § 2912a(2) and held that plaintiff's loss of opportunity to achieve a better result claim was erroneously dismissed because she submitted evidence that, had defendants properly diagnosed her breast cancer, she would have had at least a fifty-five percent chance of surviving ten years. I would, therefore, affirm the judgment of the Court of Appeals and remand plaintiff's case

6

to the trial court for proceedings consistent with this opinion.

WEAVER and KELLY, JJ., concurred with CAVANAGH, J.