Young, J.
The trial court directed a verdict in this medical malpractice case in defendants’ favor on the basis that plaintiff’s claim was barred by MCL 600.2912a(2), which precludes recovery for “loss of an opportunity to survive” unless the “opportunity was greater than 50%. ” We hold that a living person may not recover for loss of an opportunity to survive, and that plaintiff’s claim is therefore barred to the extent that it is based on such loss of opportunity. We further hold that the trial court nevertheless erred in dismissing plaintiff’s case in its entirety, because she has made additional claims that are independent of her claim for loss of an opportunity to survive. Accord *55 ingly, we reverse in part and vacate in part the opinion of the Court of Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.
I. PACTS and proceedings
Defendant Oakwood Healthcare System operates an outpatient medical clinic where plaintiff Sandra Wickens[1] consulted defendant Dr. Christopher Pabian regarding a lump in her right breast. Dr. Pabian referred plaintiff for a mammogram that Oakwood personnel administered and interpreted in April 1995. The interpreter reported that the breast tissue had abnormalities, but that they were not cause for alarm because of plaintiffs age, forty-eight, and her breast tissue density. She was told to get a repeat mammogram in six months.
In November 1995, plaintiff tried to get the repeat mammogram, but Oakwood personnel incorrectly told her that her insurance would not pay for a second mammogram within twelve months. Plaintiff waited the additional six months and had another mammogram in May 1996, when the interpreter spotted a mass in the right breast and recommended a biopsy. The biopsy, performed two weeks later, revealed a malignancy.
On May 29, 1996, plaintiff underwent a mastectomy to remove her right breast and the adjacent lymph nodes. The malignant lump in her breast measured about six centimeters in diameter. Nine of the thirteen lymph nodes contained malignant tissue, indicat *56 ing a substantial probability that the cancer had spread. Plaintiff underwent postsurgery chemotherapy and radiation treatments to minimize any chance of spreading.
In January 1997, plaintiff consulted doctors about a lump in her left breast. Although no malignancy was detected, plaintiff underwent a mastectomy to remove her left breast. That was followed with chemotherapy and radiation treatments.
Plaintiff filed this medical malpractice suit in September 1997, alleging that the one-year delay in diagnosing her cancer constituted medical malpractice by the defendants. She alleged that the defendants’ malpractice had caused her to suffer a poorer prognosis of cure or long-term survival, a reduction in the quality of life and life expectancy, the need to undergo more radical intervention than would have been necessary a year earlier, and pain and suffering.
Both parties deposed plaintiff’s expert, Dr. David Schapira, an oncologist. Dr. Schapira testified that the malignant lump in plaintiff’s right breast would most likely have measured less than two centimeters in April 1995; that at that time fewer than nine of plaintiff’s lymph nodes, probably between one and three, would have been affected by the cancer; and that it was generally regarded that appropriate treatment for a cancerous condition of that type would consist of a lumpectomy and radiation therapy, rather than a mastectomy. Moreover, according to Dr. Schapira, plaintiff’s probability of living ten years after the 1996 diagnosis was fifteen percent. If plaintiff’s breast cancer had been diagnosed in April 1995, she would have had (1) a seventy percent chance of surviving ten years if the cancer involved only one lymph node, or *57 (2) a fifty-five percent chance of surviving ten years if the cancer involved three lymph nodes. On cross-examination, Dr. Schapira opined that plaintiffs cancer had likely affected two or three lymph nodes in 1995.
Defendants filed a motion in limine for a directed verdict, arguing that according to Dr. Schapira’s testimony, plaintiff could not meet the requirements of MCL 600.2912a(2). Section 2912a(2) provides:
In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.
Defendants argued that Dr. Schapira’s testimony showed that any malpractice by defendants reduced plaintiff’s probability of surviving ten years by forty percent.[2] Because defendants calculated plaintiff’s loss at only forty percent, they contended that she therefore could not prove that she lost a greater than fifty percent opportunity to survive, as required by § 2912a(2).
The trial court agreed and granted defendants’ motion, dismissing plaintiff’s entire case.
The Court of Appeals reversed, holding that § 2912a(2) only requires that the plaintiff demonstrate that had the defendant not been negligent, there was *58 a greater than fifty percent opportunity to survive.[3] Additionally, the Court of Appeals held that plaintiff satisfied § 2912a(2) by presenting expert testimony that she would have had a fifty-five to seventy percent chance of surviving ten years if her cancer had been diagnosed in April 1995. The panel further ruled that the trial court should not have dismissed plaintiffs case in its entirety:
Plaintiffs farther argue that the trial court erred in not allowing this case to proceed to trial on their claim that, as a result of defendants’ negligence, Wickens was deprived of the opportunity for a better result. We agree. Pursuant to MCR 2.515, a “party may move for a directed verdict at the close of the evidence offered by an opponent. The motion must state specific grounds in support of the motion.” . . . Thus, the trial court erred in dismissing plaintiffs’ entire cause of action without affording plaintiffs the opportunity to present their case at trial. Furthermore, the trial court’s dismissal of plaintiffs’ entire cause of action was erroneous because defendants merely discussed plaintiffs’ claim for loss of opportunity to survive in their motion for directed verdict. [242 Mich App 393.]
We granted defendants’ application for leave to appeal, directing the parties to brief the issue whether a living plaintiff can bring a cause of action for loss of an opportunity to survive when the claimed injury is a reduction in her projected chances of long-term survival.[4]
*59 n. STANDARD OF REVIEW
Before trial, defendants filed a motion in limine for directed verdict to dismiss plaintiff’s claims for loss of an opportunity to survive and loss of an opportunity to achieve a better result. At the hearing on the motion, however, defendants referred to the motion as “defendants[’] motion for summary disposition, directed verdict.” The trial court granted the motion for defendants, on the basis of defendants’ interpretation of § 2912a(2). Because MCR 2.515 states that “[a] party may move for a directed verdict at the close of the evidence offered by an opponent[,]” we find defendants’ characterization of the motion as a directed verdict at the pretrial stage incorrect. Motions for summary disposition are brought at this stage, and we therefore treat defendants’ motion as a motion for summary disposition. This Court reviews a trial court’s decision to grant summary disposition de novo. Sewell v Southfield Public Schs, 456 Mich 670, 674; 576 NW2d 153 (1998). Similarly, questions of statutory interpretation are reviewed de novo. In re MCI Telecommunications, 460 Mich 396, 413; 596 NW2d 164 (1999).
m. ANALYSIS
A. A LIVING PLAINTIFF MAY NOT RECOVER FOR LOSS OF AN OPPORTUNITY TO SURVIVE
Plaintiff contends that she can recover for the reduction in her chances of survival caused by the delayed diagnosis as a claim for loss of an opportunity to survive under § 2912a(2). We reject plaintiff’s contention that a living plaintiff may recover for a *60 loss of an opportunity to survive under § 2912a(2) because it is contrary to the Legislature’s intent, as evidenced by the statute’s plain language.
The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. Tryc v Michigan Veterans’ Facility, 451 Mich 129, 135; 545 NW2d 642 (1996). To do so, we begin with the statute’s language. If the statute’s language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. People v Stone, 463 Mich 558, 562; 621 NW2d 702 (2001). In reviewing the statute’s language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. Altman v Meridian Twp, 439 Mich 623, 635; 487 NW2d 155 (1992).
The first sentence of § 2912a(2) provides, “In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injuiy that more probably than not was proximately caused by the negligence of the defendant or defendants.” The plain language of the statute, therefore, expressly limits recovery to injuries that have already been suffered and more probably than not were caused by the defendant’s malpractice. Thus, plaintiff can only recover for a present injury, not for a potential future injury. Plaintiff claims that a living plaintiff who suffers a reduction in chances of long-term survival because of medical malpractice may have a cause of action for loss of an opportunity to survive under the statute. The testimony that plaintiff’s chances of surviving for a ten-year period decreased, however, is evidence of a potential future injury— death—which is not an injury already suffered, as *61 required by the plain language of the statute. Thus, a loss of an opportunity to survive claim only encompasses injuries already suffered, which clearly limits recovery to situations where death has already occurred. Because the evidence concerning the reduction in her chances of survival over a ten-year period is relevant only to her potential, future death, the living plaintiff in this case may not recover for this “loss of opportunity.”
B. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF’S ENTIRE CASE
Plaintiff alleged in her complaint that defendants’ negligent one-year delay in diagnosing her breast cancer caused past and future damages including, inter alia, the need for more invasive medical treatments, emotional trauma, and pain and suffering. Defendants sought a “directed verdict” on a theory that plaintiffs claim was precluded by subsection 2912a(2). In support of their motion, defendants relied solely on the uncontested expert testimony that the one-year delay in plaintiff’s diagnosis and treatment caused her ten-year-survival rate to be reduced from fifty-five percent to fifteen percent.
The trial court erred in dismissing plaintiffs entire case on the ground that it was barred by application of subsection 2912a(2). The ten-year-survival-rate statistics say nothing about plaintiff’s chances of avoiding the other injuries she allegedly suffered, such as (1) the more invasive medical treatments caused by the one-year delay in her diagnosis, (2) the emotional trauma attributable to her unnecessarily worsened physical condition, and (3) the pain and suffering attributable to her unnecessarily worsened physical *62 condition. Because of these alleged injuries, the trial court should not have dismissed plaintiff’s case in its entirety on the basis of subsection 2912a(2).
In light of our determination that a living plaintiff may not recover for loss of an opportunity to survive and that plaintiff pleaded a cause of action for her injuries from the more invasive medical procedures she incurred on account of the alleged negligent delay in diagnosis, it was unnecessary for the lower courts to have addressed whether plaintiff had a cause of action solely on the basis of the reduction in her ten-year survival rate. Accordingly, we vacate that portion of the Court of Appeals opinion.
IV. CONCLUSION
In light of the plain language of MCL 600.2912a(2), which allows recovery only for injuries that have already been suffered, we conclude that a living plaintiff may not recover for loss of an opportunity to survive on the basis of a decrease in her chances of long-term survival. We further conclude that, although plaintiff may not recover for loss of an opportunity to survive, the trial court improperly dismissed her remaining claims, which are not premised upon her decreased chances of long-term survival. Accordingly, we reverse in part and vacate in part the opinion of the Court of Appeals and remand plaintiff’s case to the trial court for further proceedings consistent with this opinion.
Corrigan, C.J., and Taylor and Markman, JJ., concurred with Young, J.

 Plaintiff David Wickens’ claim is derivative in nature. For the sake of simplicity, we refer to Sandra Wickens as “plaintiff.”

 Defendants arrived at forty percent by subtracting the May 1996 ten-year survival rate of fifteen percent from the April 1995 rate of fifty-five percent, given Dr. Schapira’s opinion that the cancer had likely affected two to three lymph nodes in 1995.

 242 Mich App 385; 619 NW2d 7 (2000).

 463 Mich 907 (2000). The order continued the stay of proceedings in the Wayne Circuit Court that we had previously ordered on October 20, 2000.