**Michael B. KOKOSZKA.,
Plaintiff–Appellant,**

v.

**BASF CORPORATION, Defendant–
Appellee.**

No. 01–1914.

United States Court of Appeals,
Sixth Circuit.

Feb. 4, 2003.

Before KRUPANSKY, SILER, and COLE, Circuit Judges.

KRUPANSKY, Circuit Judge.

The plaintiff-appellant, Michael B. Kokoszka ("Kokoszka" or "the plaintiff"), has assailed the district court's direction of a Fed.R.Civ.P. 50 post-trial judgment as a matter of law in favor of the plaintiff's former employer, defendant-appellee BASF Corporation ("BASF" or "the defendant"), by which it rejected the plaintiff's diversity age discrimination in employment complaint anchored in Michigan's Elliott–Larsen Civil Rights Act ("Elliott–Larsen Act"). Mich. Comp. Laws Ann. § 37.2202(1)(a)(2001). Following its examination of all evidence admitted at trial, the district court ruled that a rational jury could not find that BASF had discharged Kokoszka because of his age. in light of uncontested proof that BASF had eliminated Kokoszka's job in a bona fide reduction in force

("RIF"), and that sound business reasons supported the defendant's selection of Kokoszka as the person to eliminate from its payroll. Furthermore, Kokoszka had produced no evidence that the pertinent decision-maker (Dennis Watt) had ever expressed or displayed any ageist bias.

In October 1963, Kokoszka commenced working as an hourly wage laborer for BASF's predecessor in interest, at a plant located on Bourke Avenue in Detroit, Michigan. The record evidence reflected that Kokoszka had consistently manifested an amalgam of strengths and weaknesses as a BASF employee. As a result, between his hiring in 1963 and his discharge in 1997, the plaintiff had "see-sawed" through various promotions and demotions.

In 1993, at the age of 48. Kokoszka sustained a demotion from the post of supervisor of shipping and receiving to a "first line" production supervision assignment. Kokoszka conceded that he did not believe that his 1993 downgrade had been caused by his protected age category. To the contrary, an unfavorable 1992 performance and development review by his then-superior, Jerry Sobecki ("Sobecki"), furnished objective reasons for his demotion, including, among other things, a lack of effective communication and interpersonal skills, a "negative" attitude conveyed during official meetings, and difficulties with organization, problem pre-emption, and timely completion of assigned tasks.

In mid–1994, the defendant re-assigned Kokoszka from production supervision to the post of "operation scheduler." His new supervisor. Ernst Schneider ("Schneider"), gave Kokoszka a "mixed" review in late 1994. Schneider's superior A.J. Schweikert ("Schweikert") approved that evaluation, and added his personal observations that Kokoszka needed "to

work on his communication skills and to become more team-oriented in 1995." The plaintiff conceded at trial that the criticisms contained in his 1994 review were not driven by any evident ageist animus.

In January 1995, BASF closed a factory located on Milford Avenue in Detroit. Subsequently, many of the former Milford workers were transferred to the Bourke Avenue facility, including some workers above age 40. Later that year, the defendant re-assigned Kokoszka to the newly-created office of "yardmaster," in which capacity he was responsible for foreseeing and preempting production schedule problems. The plaintiff's 1995 performance assessment, which was the product of collaboration by Schweikert. Production Superintendent Wally Adams ("Adams"), and Production Superintendent William Hardigan ("Hardigan"), reflected that Kokoszka had performed poorly as "yardmaster." That evaluation restated past criticisms of his ineffectual communications with subordinates, his "teamwork" deficiencies, and his inability to solve problems absent intervention by a superintendent, as well as his tendency to blame others for his failings and his resistance to accepting new responsibilities.

In November 1995, BASF eliminated the "yardmaster" slot, and restored Kokoszka to his former "first line" supervisory position, under Production Superintendent Adams. In December 1995, partially due to the influx of transplanted personnel from the Milford Road foundry, BASF instituted a RIF downsizing program at the Bourke Avenue plant. However, Kokoszka survived that purge. The following year, 1996, BASF re-allocated Kokoszka to a supervisory role under Production Superintendent Rolla Oliver ("Oliver"), a Milford Avenue transferee who, at 44, was only six years younger than the 50–year–old plaintiff. In February 1996, a major

paint spill occurred inside the Bourke Avenue factory. Although the plaintiff had not caused that disaster, he was responsible for its clean-up. Oliver concluded that Kokoszka's response to the catastrophe, including his failure to wear a respirator in the toxic-fume-laden area and his election to move a forklift within the sensitive district irrespective of his lack of an operator's license, displayed extremely poor judgment and disrespect for fundamental workplace safety rules and procedures.

Subsequently, a paint spill of even greater magnitude transpired. While Kokoszka and Oliver observed clean-up efforts from outside the cordoned-off contaminated area, Oliver inquired whether the workers were using only spark-proof plastic shovels. Evidently, Kokoszka had failed to ensure that none of the clean-up crew was using a shovel with a metal head, which could cause a catastrophic explosion or fire if a spark were generated by a metal shovel head hitting the concrete floor. Kokoszka replied that he did not know what kind of shovels the men were using, and began to charge under the "caution" tape barrier into the contaminated space without donning a respirator. Oliver halted and admonished the plaintiff for commencing to do precisely what Oliver had chided him for doing in connection with the earlier paint spill.

On April 29, 1996, with the prior approval of Schweikert and the BASF Human Resources Department. Oliver placed Kokoszka on a six-month "performance improvement plan" ("PIP") instigated by the plaintiff's conduct related to the two paint spills, as well as an additional incident wherein Kokoszka's inspection of paint mixing equipment failed to unearth a significant defect which risked a massive explosion. In Kokoszka's 1996 performance evaluation, Oliver severely criticized the plaintiff for deficiencies in decision-mak-

ing, teamwork, supporting the company's written policies and procedures, and leadership/supervision skills.

On January 16, 1997, Oliver and William Herrmann ("Herrmann") of the Human Resources Department met with Kokoszka to counsel him regarding his chronic malfeasance, specifically including his failure to construct a positive "team spirit," the general disarray which prevailed during his work shift, and his neglect to satisfy deadlines or to timely advise that a deadline could not be met. During that meeting, Oliver inquired about a specific paint batch under production which was needed to fill a pending customer order. Kokoszka assured him that he would not leave the plant that night until that product was "ready to go." Nevertheless, Kokoszka went home that evening with the paint batch in question still uncompleted.

The following morning. Oliver issued a "final written warning" to Kokoszka for his unacceptable job performance. That January 17, 1997 advisory informed the plaintiff that "[a]ny further unacceptable performance can result in additional corrective discipline, up to and including discharge." Subsequently, in February 1997. Kokoszka continued his pattern of inattentiveness to work order deadlines by missing at least two of them. However, instead of seeking Kokoszka's termination. Oliver on those occasions merely counseled him concerning those failings.

Subsequently, around March 1997. BASF promoted Oliver to Engineering and Maintenance Manager; thus, he ceased supervising Kokoszka. The plaintiff's new supervisor, Dennis Watt ("Watt"), was only five years younger than Kokoszka. At that time, Kokoszka was assigned to the "first line" production supervision job on the "clear coat processing lane." In May 1997, Watt determined that Kokoszka had to be removed from active supervision because of his perpetual inability to work harmoniously with others, as well as his propensity to conceal problems with production runs. The plaintiff had encountered considerable difficulty in working with the second-shift "first line production supervisor" in the clear coat division, Lenny Hamilton ("Hamilton"), who was only five years younger than Kokoszka. Accordingly, Watt re-deployed Kokoszka to a "special assignment" which entailed no loss in salary or title, but which did not involve supervising others. In the plaintiff's estimation, that "temporary" special project required him to perform dirty and menial tasks, whereas Watt described it as requiring the plaintiff to perform "root cause analysis and identify problems within the plant." Watt had advised the plaintiff that, because his "special assignment" was temporary, he should be actively searching for an alternative placement within BASF, and that he (Watt) would support the plaintiff's lateral transfer within the organization as long as the new assignment did not comprise "a leadership position."

Although Kokoszka subsequently became aware of two suitable vacancies in the logistics department, he neglected to apply for either of them, purportedly because the Human Resources Department had informed him that his prior PIP and his current "final warning" status disqualified him from any lateral intra-company move. In October 1997, BASF announced an impending second "reduction in force" at the Bourke Avenue foundry. At age 52, Kokoszka, together with two additional salaried employees plus 25 hourly workers, were selected for layoff. Watt alone made the decision to release Kokoszka.

On May 5, 2000, the plaintiff initiated a two-count complaint against BASF in Michigan state court, which the defendant subsequently removed to federal district

court under 28 U.S.C. § 1332(a)(1). The district court dismissed the plaintiff's second cause of action, which had been anchored in the federal Employee Retirement Income Security Act ("ERISA"), prior to trial; that ruling has not been contested before this reviewing court. Kokoszka's first cause of action, by which he claimed age discrimination in employment under Michigan law, proceeded to a jury trial. However, following the close of all proofs on March 27, 2001, the jurors' deliberations deadlocked. On March 28, 2001, the district judge declared a mistrial, and the defense renewed its Fed. R.Civ.P. 50 motion for judgment as a matter of law.[1] On March 30, 2001, the trial bench presided over oral argument. On May 31, 2001, via a written opinion and judgment, the district court granted BASF's Rule 50 motion, thereby directing a verdict in favor of the defendant BASF. The lower court's opinion concluded, *inter alia*, that "[i]n this Court's opinion, Plaintiff has failed to produce any evidence that his age played a role in the decision to terminate him and therefore, Defendant's motion for judgment as a matter of law (directed verdict) shall be granted." Trial court opinion, page 6 (parentheticals in original).

On review, Kokoszka has contested that final judgment for the defendant, arguing that he had proffered legally sufficient evidence upon which a rational jury could conclude, under Michigan law, that he had been dismissed from his job for an age-discriminatory reason. He has emphasized that most of his annual performance reviews had contained praise of certain dimensions of his work product and habits mixed with criticisms of other aspects of his performance; that he would have be-

come vested in a larger pension benefit if the defendant had permitted him to remain on its payroll for three more years (that is, until he had attained age 55); and the defendant, in its October 1997 downsizing, should instead have released Kurt Furcean, a 31–year–old first line production supervisor who had been transferred to Bourke Avenue from Milford Road, or alternatively should have cashiered any one of six other retained supervisors who were younger than the plaintiff, because BASF purportedly had followed a customary layoff practice which favored the retention of senior workers if all other pertinent factors were equal.

The Sixth Circuit examines *de novo* a district court's grant of judgment as a matter of law under Fed.R.Civ.P. 50, "applying the same test as the district court must apply." *Gray v. Toshiba America Consumer Products, Inc.*, 263 F.3d 595, 598 (6th Cir.2001). Rule 50(a)(1) posits that "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," then judgment as a matter of law for the opposing litigant is appropriate. Both in the initial forum and on review, the evidence must be viewed "in a light most favorable to the nonmoving party," and the court must "give that party the benefit of all reasonable inferences." *Danielson v. City of Lorain*, 938 F.2d 681, 683 (6th Cir.1991). The motion should be granted only if no material controverted issue of fact remains for jury resolution, and no credibility determination or comparative weighing of evidence is implicated in reaching the decision. *See Gray*, 263 F.3d at 598, 600.

---

1. BASF had initially moved for judgment as a matter of law at the close of the plaintiff's case. However, the trial judge took that mo-

tion "under advisement," directing BASF to proceed with its defense.

Michigan substantive law governs this diversity case. *See Bailey Farms, Inc. v. NOR–AM Chemical Co.*, 27 F.3d 188, 191 (6th Cir.1994). In Michigan, a directed verdict is warranted" only when no factual questions exist on which reasonable minds could differ." *Wickens v. Oakwood Healthcare Sys.*, 242 Mich.App. 385, 619 N.W.2d 7, 9 (Mich.Ct.App.2000).

Like the federal Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 623(a)(1)), Michigan's Elliott–Larsen Civil Rights Act bans employment discrimination by reason of age. Mich. Comp. Laws Ann. § 37.2202(1)(a). The Michigan courts have "consistently relied on the federal judiciary for guidance when addressing the Michigan Civil Rights Act." *Koester v. City of Novi*, 458 Mich. 1, 580 N.W.2d 835, 840 (Mich.1998). The Sixth Circuit has instructed:

> A Michigan plaintiff who alleges unlawful employment discrimination generally has three approaches at his disposal. First, he may proceed under the approach enunciated by the United States Supreme Court in the landmark case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The second approach is one delineated by the Michigan courts which

generally examines whether age was a determinative factor in the plaintiff's discharge. Finally, a plaintiff may proceed by showing through circumstantial, statistical or direct evidence that he has been discriminated against.

*McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1159 (6th Cir.1990).

The district court, in its May 31, 2001 Opinion, exhaustively examined the material evidence of record and the legal issues framed by the litigants, concluding that, after construing all record evidence most favorably for Kokoszka as the opponent of judgment as a matter of law, including by drawing all sustainable reasonable inferences and resolving all credibility issues in his favor, the plaintiff had not produced legally sufficient evidence to satisfy a rational jury that BASF had discriminated against him in employment because of his age under any of the three Michigan law theories evolved in *McDonald* and its progeny. On appeal, Kokoszka has concentrated his argument exclusively upon the "burden shifting" *McDonnell Douglas* paradigm as adopted by the Michigan courts.[2] *See Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906, 914–15 & n. 19 (Mich.

---

**2.** The Michigan Court in *Lytle* explained:

> To establish a prima facie case of discrimination, plaintiff must prove by a preponderance of the evidence that (1) [he or] she was a member of the protected class [i.e., age 40 or more]; (2) [he or] she suffered an adverse employment action, in this case, demotion and then discharge; (3) [he or] she was qualified for the position; but (4) [he or] she was discharged under circumstances that give rise to an inference of unlawful discrimination. Once plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises. The burden then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for plaintiff's termination to overcome and dispose of this presumption....

> Once the defendant produces such evidence, even if later refuted or disbelieved, the presumption drops away, and the burden of proof shifts back to the plaintiff. At this third stage of proof, in this case in response to the motion for summary disposition, plaintiff had to show, by a preponderance of admissible direct or circumstantial evidence, that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination.

> *Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906, 914–15 (Mich.1998). (Bracketed material added; footnotes omitted).

1998); *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465–66 (6th Cir.1990).

Even assuming *arguendo* that the plaintiff had supplied legally sufficient evidence to prove the four elements of a Michigan law *prima facie* circumstantial age-motivated "disparate treatment" employment discrimination case, he failed to produce evidence upon which a rational fact-finder could conclude that the defendant's proffered legitimate nondiscriminatory reasons for selecting him for a "reduction-in-force" termination were mere pretexts masking actual ageist discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–09, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. At bottom, the overall record evidence, as developed herein and in the district court's opinion, proved beyond contradiction that BASF possessed objectively valid, performance-based reasons for discharging the plaintiff. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000); *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372 (6th Cir.1999); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084–85 (6th Cir.1994). By contrast, the plaintiff failed to furnish evidence which would be sufficient to support a jury finding that his dismissal was nonetheless actually animated by impermissible ageist considerations. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

Following a careful and thorough *de novo* study of the record evidence, the opinion of the lower court, the briefs and arguments of counsel, and the controlling legal authorities, this reviewing court concludes that the trial court's analysis and final judgment were correct as a matter of law. Accordingly, this court adopts the opinion of the district court dated May 31, 2001.

Thus, final judgment for the defendant BASF is AFFIRMED.