**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 22, 2010

STATE OF MICHIGAN

SUPREME COURT

TRACY EDRY,

      Plaintiff-Appellant,

v

No. 138187

MARC ADELMAN and MARC
ADELMAN, D.O., P.C.,

      Defendants-Appellees.

MEMORANDUM OPINION.

In this case we must decide whether the trial court abused its discretion by

excluding plaintiff's expert's testimony under MRE 702 and whether the trial court erred

by dismissing plaintiff's entire complaint. We affirm the Court of Appeals judgment that

the trial court did not abuse its discretion by barring the expert's testimony as unreliable

and did not err by dismissing plaintiff's entire complaint.[1]

_____

[1] The Court of Appeals also opined that *Wickens v Oakwood Healthcare Sys*, 465
Mich 53; 631 NW2d 686 (2001), bars plaintiff's claim to the extent that it is based on a
loss of an opportunity to survive. *Edry v Adelman*, unpublished opinion per curiam of the
Court of Appeals, issued December 23, 2008 (Docket No. 279676), p 4. We granted

In June 2003, plaintiff noticed an approximately three-millimeter lump under her arm. Before noticing the lump, plaintiff had been seeing defendant,[2] an obstetrician and gynecologist (OB/GYN), for routine check-ups. According to plaintiff, she brought the lump to defendant's attention in 2003, and defendant told her to check back with him if the lump increased in size, but he did not order any tests, consult with a surgeon, or schedule a follow-up appointment. In 2005, plaintiff was diagnosed with breast cancer. The initial biopsy indicated that the cancer was invasive and had spread to 16 lymph nodes. Plaintiff then had a radical mastectomy, three rounds of chemotherapy, and radiation therapy.

Plaintiff filed a suit against defendant, alleging that defendant breached the applicable standard of care by failing to test for cancer when plaintiff first brought the lump to defendant's attention in 2003. Plaintiff alleged that her opportunity for long-term survival was substantially diminished by the delay in diagnosis and treatment and that she was subjected to more invasive, severe, and disfiguring medical treatment as a result of defendant's negligence. Dr. Rainna Brazil, an OB/GYN, signed plaintiff's affidavit of merit, which explained defendant's standard of care and how he breached that standard of care, and claimed that defendant's breach resulted in plaintiff having to

leave to appeal in part to consider whether *Wickens* was properly decided. 485 Mich 901 (2009). In light of the evidentiary issue in this case, however, we need not reach this issue here.

[2] Although Marc Adelman and Marc Adelman, D.O., P.C., are both named defendants in this case, because only Marc Adelman's conduct is the focus of this case, we will simply refer to "defendant."

undergo more invasive medical treatment. Dr. Brazil also testified at a deposition regarding defendant's standard of care. Specifically, Dr. Brazil testified that cancer growth rates and survival statistics of breast cancer patients are not within her area of expertise and that such determinations are best left to a medical oncologist. Plaintiff's second OB/GYN expert, Dr. Roger Kushner, also testified that cancer growth rates are best determined by an oncologist.

Dr. Barry Singer testified at a deposition as plaintiff's oncology expert. He stated that plaintiff's chances of surviving five years would have been 95 percent if she had been diagnosed in June 2003 and that the delay in diagnosis reduced her five-year survival chance to 20 percent. Dr. Singer acknowledged that the American Joint Cancer Commission (AJCC) manual was authoritative on this subject and reported a 60 percent five-year survival rate for breast cancer patients when the cancer has spread to four or more lymph nodes. Dr. Singer stated, however, that the manual was not applicable to plaintiff's case because the cancer had spread to 16 lymph nodes, and he believed that the more lymph nodes involved, the poorer the chance of survival. During his deposition, Dr. Singer referred to textbooks and journal articles that supported his theory, but plaintiff never produced those authorities to support his testimony.

Defendant's oncology expert, Dr. Joel Appel, testified that plaintiff's chance of survival was 60 percent based on the AJCC manual and that it was medically improper to consider the number of lymph nodes involved as a predictor of a patient's chance of survival. Further, Dr. Appel testified that Dr. Singer's opinion was not based on

3

recognized scientific or medical knowledge, was not generally accepted in the medical community, and could not be substantiated with any medical evidence.

Defendant moved for summary disposition on the basis that Dr. Singer's testimony was not admissible under MRE 702. After a hearing on the issue, the trial court entered an order that barred Dr. Singer from testifying at trial, but it did not state whether it was granting defendant's motion for summary disposition. Plaintiff moved to set aside the trial court's order barring Dr. Singer's testimony, and defendant moved to dismiss the complaint, arguing that plaintiff could not prove medical malpractice without Dr. Singer's testimony. After a second hearing, the trial court denied plaintiff's motion and granted defendant's motion to dismiss the case in its entirety with prejudice. Plaintiff appealed as of right.

Noting that the trial court's basis for disposing of the case was not clear, the Court of Appeals reviewed the record and determined that the trial court's decision should be reviewed as a decision on a motion for summary disposition under MCR 2.116(C)(10).[3] *Edry v Adelman*, unpublished opinion per curiam of the Court of Appeals, issued December 23, 2008 (Docket No. 279676), p 2. The Court of Appeals then affirmed, reasoning that Dr. Singer's testimony was properly barred under MRE 702, among other

---

[3] Under MCR 7.216(A), "[t]he Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . enter any judgment or order or grant further or different relief as the case may require . . . ." MCR 7.216(A)(7). Therefore, it was proper for the Court of Appeals to review the trial court's decision as a decision on a motion for summary disposition.

4

reasons. *Id.* at 5. This Court granted leave to appeal. *Edry v Adelman*, 485 Mich 901 (2009).

This Court reviews a motion for summary disposition de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). This Court has stated that "the proponent of evidence bears the burden of establishing relevance and admissibility . . . ." *People v Crawford*, 458 Mich 376, 386 n 6; 582 NW2d 785 (1998).

The admissibility of expert witness testimony is governed by MRE 702, which states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This Court has stated that MRE 702 incorporates the standards of reliability that the United States Supreme Court described to interpret the equivalent federal rule of evidence in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004). Under *Daubert*, "the trial judge must ensure that any and all scientific testimony

or evidence admitted is not only relevant, but reliable." *Daubert*, 509 US at 589. This Court has implied that, while not dispositive, a lack of supporting literature is an important factor in determining the admissibility of expert witness testimony. See *Craig*, 471 Mich at 83-84 (stating that the expert's singular reliance on his own hypothetical depiction of an event may have been too speculative and, therefore, inadmissible under MRE 702). See, also, *Daubert*, 509 US at 593 (stating that whether there is peer-reviewed and published literature on a theory is a "pertinent consideration" because "submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected").

Here, Dr. Singer's testimony failed to meet the cornerstone requirements of MRE 702. Dr. Singer's opinion was not based on reliable principles or methods; his testimony was contradicted by both the defendant's oncology expert's opinion and the published literature on the subject that was admitted into evidence, which even Dr. Singer acknowledged as authoritative. Moreover, no literature was admitted into evidence that supported Dr. Singer's testimony. Although he made general references to textbooks and journals during his deposition, plaintiff failed to produce that literature, even after the court provided plaintiff a sufficient opportunity to do so. Plaintiff eventually provided some literature in support of Dr. Singer's opinion in her motion to set aside the trial court's order, but the material consisted only of printouts from publicly accessible websites that provided general statistics about survival rates of breast cancer patients. The fact that material is publicly available on the Internet is not, alone, an

6

indication that it is unreliable, but these materials were not peer- reviewed and did not directly support Dr. Singer's testimony.[4] Moreover, plaintiff never provided an affidavit explaining how Dr. Singer used the information from the websites to formulate his opinion or whether Dr. Singer ever even reviewed the articles.

Plaintiff failed to provide any support for Dr. Singer's opinion that would demonstrate that it has some basis in fact, that it is the result of reliable principles or methods, or that Dr. Singer applied his methods to the facts of the case in a reliable manner, as required by MRE 702. While peer-reviewed, published literature is not always a necessary or sufficient method of meeting the requirements of MRE 702, in this case the lack of supporting literature, combined with the lack of any other form of support for Dr. Singer's opinion, renders his opinion unreliable and inadmissible under MRE 702.[5] See, generally, *Craig*, 471 Mich at 83-84; *Daubert*, 509 US at 593-594.

---

[4] The dissent notes that one of the printouts that plaintiff provided was from the American Cancer Society (ACS) website and quotes statistics from the AJCC. The dissent ignores, however, the fact that (1) Dr. Singer acknowledged that the AJCC manual contradicted his opinion, (2) the ACS website does not provide survival rates for patients with Stage IIIC breast cancer, which was plaintiff's expert's diagnosis regarding plaintiff's cancer, and (3) the other materials provided by plaintiff are from lifetimetv.com and imaginis.com, which the dissent does not argue are peer-reviewed. And, regardless of the peer-reviewed status of these materials, the dissent fails to acknowledge that these materials do not directly support Dr. Singer's testimony, and plaintiff never explained how or even whether Dr. Singer used the information to formulate his opinion.

[5] Although the dissent faults the trial court for not conducting an evidentiary hearing, the trial court properly based its decision on the admissibility of Dr. Singer's testimony on the testimony and evidence before it at that time, particularly given that *plaintiff* argued that there was no reason for the trial court to hold a *Daubert* hearing regarding Dr. Singer's testimony.

Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible.[6] Plaintiff has failed to satisfy her burden regarding the admissibility of Dr. Singer's opinion; therefore, the trial court did not abuse its discretion by excluding Dr. Singer's testimony as unreliable under MRE 702.[7]

Because the trial court did not abuse its discretion by excluding Dr. Singer's testimony, the next issue is whether defendant is entitled to summary disposition as a matter of law under MCR 2.116(C)(10) on the ground that plaintiff failed to establish a genuine issue of material fact. Plaintiff argues that the trial court erred by dismissing her entire complaint because, even without Dr. Singer's testimony, she had provided sufficient evidence that the delay in diagnosis resulted in the need for more invasive medical treatment and decreased her odds of surviving five years, which established a genuine issue of material fact. We reject these arguments.

First, plaintiff cannot pursue a claim based solely on her decreased odds of survival because that alone does not create a basis for relief under MCL 600.2912a(2).

---

[6] Similarly, federal courts applying *Daubert* have held that "the whole point of *Daubert* is that experts can't 'speculate.' They need analytically sound bases for their opinions," *DePaepe v Gen Motors Corp*, 141 F3d 715, 720 (CA 7, 1998), and "[i]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v Denver & R G W R Co*, 215 F3d 1083, 1088 (CA 10, 2000).

[7] We need not address MCL 600.2955 in this case because an expert witness who is qualified under one statute may be disqualified on other grounds. See *Woodard v Custer*, 476 Mich 545, 574 n 17; 719 NW2d 842 (2006). Here, Dr. Singer's opinion is inadmissible under MRE 702; therefore, it is unnecessary to consider the admissibility of his opinion under MCL 600.2955.

8

Defendant's expert did testify that the delay decreased plaintiff's odds of surviving five years, but he did not testify that any present injury arose from that reduction in her survival chance. This Court has held that a reduced chance of survival alone is not a cognizable injury under MCL 600.2912a(2). See *Wickens v Oakwood Healthcare Sys*, 465 Mich 53; 631 NW2d 686 (2001).[8] Defendant's expert merely testified that the delay reduced plaintiff's odds of surviving five years, which is not a present injury as required by MCL 600.2912a(2). Because defendant's expert did not testify as to any other harm that could be considered a present injury, plaintiff cannot support her claim with defendant's expert's testimony.

Second, plaintiff also cannot recover for her claimed injury of needing more invasive medical treatment because she did not satisfy her burden to show that the delayed diagnosis caused the need without Dr. Singer's testimony.[9] Her OB/GYN expert's affidavit of merit cannot satisfy this burden. Cancer growth rates would seemingly be a key factor in determining whether the delayed diagnosis resulted in the need for more invasive medical treatment, and yet Dr. Brazil specifically testified during

---

[8] Even under the opinion concurring in part and dissenting in part in *Wickens*, plaintiff would not have a cognizable claim because she has failed to provide any evidence of a present injury resulting from any possible loss of an opportunity to achieve a better result. *Wickens*, 465 Mich at 63 (CAVANAGH, J., concurring in part and dissenting in part).

[9] Moreover, Dr. Singer never testified that the delay in diagnosis resulted in the need for more invasive medical treatment, and the Internet articles that plaintiff eventually provided in an effort to support Dr. Singer's testimony actually indicate that treatment even for Stage I cancer often involves chemotherapy and a mastectomy.

9

her deposition that she would defer to an oncologist on the issue of cancer growth rates. Therefore, Dr. Brazil admitted that she was not qualified to testify as an expert on the issue of cancer growth rates, which is the only support that plaintiff offers for her claim that the delay in diagnosis resulted in the need for more invasive medical treatment. As a result, plaintiff has failed to provide any admissible evidence to prove that the delay in diagnosis of her cancer resulted in the need for more invasive medical treatment.[10]

In conclusion, plaintiff has failed to provide sufficient evidence to support either of her claims. Although there was evidence that plaintiff's odds of survival had decreased as a result of the delayed diagnosis, plaintiff did not provide sufficient evidence to prove that these decreased odds resulted in a present injury, which is required under MCL 600.2912a(2). See *Wickens*, 465 Mich at 53. Plaintiff also failed to provide sufficient evidence to support her claim that the delayed diagnosis resulted in the need for more invasive medical treatment because the testimony of Dr. Singer, who was plaintiff's only potential source of evidence that could satisfy her burden on this point, was properly barred under MRE 702. Because plaintiff has not satisfied her burden as to either claim, the Court of Appeals correctly determined that there was no

---

[10] The dissent argues that granting defendant's motion for summary disposition is premature because the trial court did not consider Dr. Brazil's potential testimony regarding plaintiff's theory of proximate causation. The dissent ignores two key problems, however. First, the trial court did not consider Dr. Brazil's testimony as it relates to plaintiff's theory of proximate causation because plaintiff never indicated that Dr. Brazil would testify regarding that subject. A plaintiff must satisfy the burden of proving support for a claim, but plaintiff failed to do so, see *Locke v Pachtman*, 446 Mich 216, 222; 521 NW2d 786 (1994), and MCL 600.2912a. Second, Dr. Brazil's testimony was inadmissible for that purpose for the reasons explained above.

genuine issue of material fact, and summary disposition in favor of defendant was proper under MCR 2.116(C)(10).

Affirmed.

KELLY, C.J., and CAVANAGH, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

# STATE OF MICHIGAN

## SUPREME COURT

TRACY EDRY,

      Plaintiff-Appellant,

v

No. 138187

MARC ADELMAN and MARC
ADELMAN, D.O., P.C.,

      Defendants-Appellees,

_____

HATHAWAY, J. (*dissenting*).

I respectfully dissent from the majority opinion which holds that the trial court did not abuse its discretion by precluding plaintiff's expert witness's testimony. In performing its gatekeeping role, a trial court is required to consider *all* factors enumerated in MCL 600.2955 before it strikes an expert witness, and it is an abuse of discretion for the trial court to fail to do so. *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067 (2007). In this case, the trial court reviewed only one § 2955 factor to determine if plaintiff's expert's testimony had an indicia of reliability, rather than examining all of the § 2955 factors to determine if any one of the factors established an indicia of reliability. Based on this narrow review, the trial court precluded plaintiff's expert from testifying because plaintiff did not present medical articles on the growth rate of cancer in support of her position. By limiting its inquiry to only one enumerated criterion of MCL 600.2955, the trial court abused its discretion. Because the majority

ignores the plain language of MCL 600.2955, which mandates that a trial court review *all* the enumerated factors within § 2955 to determine if any one § 2955 factor established an indicia of reliability, as well as this Court's clear directive in *Clerc*, I must respectfully dissent.

Accordingly, I would reverse the Court of Appeals judgment and remand this matter to the trial court for further proceedings consistent with this opinion.

## I.  FACTS AND PROCEEDINGS

This case involves allegations of medical malpractice.  Plaintiff, Tracy Edry, alleges that defendant, Dr. Marc Adelman, violated the standard of care and committed professional negligence as a result of his failure to timely diagnose and treat plaintiff's breast cancer.  Plaintiff alleges that the delay in diagnosis and the failure to timely treat her cancer resulted in an unnecessary progression of her cancer, which, in turn, caused a need for more invasive treatment and a loss in her chance of survival.  The plaintiff pled two separate claims, one for loss of opportunity to survive and one for a present injury. At issue before us is whether the trial court properly precluded plaintiff's oncology expert from testifying on the issue of proximate causation on both the loss of opportunity to survive claim as well as the claim for a present injury.

The issue was initially brought before the trial court by way of defendants' "motion for summary disposition premised on plaintiff's inability to prove a greater than 50% loss of opportunity to survive, or alternatively motion for MRE 702 evidentiary hearing."  At the hearing, the trial court ruled that the plaintiff's expert, Dr. Barry Singer, was precluded from testifying at trial.  The transcript reflects that the court did not

conduct an evidentiary hearing under MRE 702, but, instead, briefly summarized its understanding of the parties' positions on the record. The court stated that it was familiar with its gatekeeping function and the requirements of MRE 702 and MCL 600.2955. The court then ruled that Dr. Singer's testimony was unscientific because plaintiff had failed to produce articles to support his position; however, it did not address any of the other § 2955 criteria. The trial court did not rule on defendants' motion for summary disposition to dismiss plaintiff's complaint, nor did it grant defendants' request for an MRE 702 evidentiary hearing; rather, it ruled that it was striking plaintiff's expert witness. The trial court stated:

> This Court's review of Singer's deposition transcript reveals that he is an experience—he is experienced in what likely will qualify as an expert in oncology. However, Singer recites an opinion, to wit; that plaintiff had a 20% chance of survival at the time of diagnosis, which plaintiff fails to establish this—to this Court as supported and reliable in the scientific community. In other words, it is speculation.

> Therefore, for the reasons stated herein, and those outlined by defendants, the Court grants defendant's motion under MRE 702 and *Daubert* [*v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993)]. Defendants may present an order consistent with this opinion, indicating that plaintiff's witness may not testify because it appears his testimony is unreliable. Have a good day.

> *Ms. Siegan [defense counsel]*: Your Honor, may I ask for clarification? Does that mean that the Court is granting summary disposition of the whole case?

> *The Court*: I'm leaving plaintiff to figure that out. Have a good day.

The defendants then brought a second motion, this time entitled "[m]otion for dismissal for [plaintiff's] failure to meet her burden of proof." Plaintiff brought a "[m]otion to set aside [the] order [to strike her witness]." In support of her motion,

3

plaintiff submitted four medical articles concerning the staging of cancer. Two of the articles were publications from the American Cancer Society (ACS), discussing the various stages of breast cancer as set forth by the American Joint Committee on Cancer (AJCC). Both the plaintiff's and the defense's expert agreed that the AJCC was a reliable source on the staging of breast cancer. Plaintiff's counsel argued that the expert's opinion was supported by and flowed logically from that literature. Defense counsel argued that because the American Cancer Society articles that contained the AJCC standards could be found on a public website they were not peer reviewed or scientific. Defendants also argued that the articles did not support plaintiff's theory; that defendants' expert disputed plaintiff's expert's testimony; and, finally, that plaintiff's expert's testimony was contradicted by the AJCC standards.

The trial court again did not conduct an evidentiary hearing. The trial court only addressed the issue of plaintiff's literature, this time finding that it was not accompanied by expert testimony and that the literature did not appear to support plaintiff's theory. The court then ruled that it was granting defendants' motion to dismiss.

The Court of Appeals affirmed the trial court holding and stated:

> In this case, Dr. Singer's testimony clearly contradicted the AACJ [sic: AJCC] standards. Additionally, defendants' expert, Dr. [Joel] Appel, testified that it was medically improper to simply use the number of positive lymph nodes, as Dr. Singer had done, to assess the chance of survival. Dr. Appel also claimed that Dr. Singer's opinion that plaintiff had less than a 20 percent chance of survival due to the number of positive lymph nodes was not based on any scientific, technical, or specialized knowledge, was not generally accepted within the scientific community, and could not be substantiated by any medical evidence. At his deposition, Dr. Singer testified that his opinion was supported by the medical literature. Plaintiff was given an opportunity to submit the articles that Dr. Singer

4

claimed supported his opinion, but never did so. Instead, plaintiff presented generalized Internet articles that did not clearly support Dr. Singer's testimony. In particular, none of the articles that plaintiff submitted indicated that a person with plaintiff's pathology (i.e., tumor size and number of positive nodes) had less than a 20 percent chance of survival. For these reasons, the trial court did not abuse its discretion in determining that Dr. Singer's testimony was not shown to be sufficiently accepted in the scientific community to be reliable and, therefore, was not admissible. Without Dr. Singer's testimony, plaintiff had no other evidence showing that she sustained a loss of the opportunity to survive that was greater than 50 percent. [*Edry v Adelman*, unpublished opinion per curiam of the Court of Appeals, issued December 23, 2008 (Docket No. 279676), p 4.]

Plaintiff sought leave to appeal in this Court, and we granted leave asking the parties to include "among the issues to be briefed: (1) whether *Wickens v Oakwood Healthcare Sys*, 465 Mich 53 [631 NW2d 686] (2001), was correctly decided; and (2) whether the lower courts erred in finding that Dr. Singer's testimony was inadmissible under MRE 702."[1]

## II. STANDARD OF REVIEW

This case involves review of a trial court's ruling concerning the admissibility of an expert's opinion which this court reviews for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). The case also presents issues of statutory interpretation. Statutory interpretation is a question of law that is reviewed de novo. *In re Investigation of March 1999 Riots in East Lansing*, 463 Mich 378, 383; 617 NW2d 310 (2000). Finally, we review the trial court's grant of summary disposition pursuant to MCR 2.116(C)(10) de novo. *Maiden v Rozwood*, 461 Mich 109; 597 NW2d 817 (1999).

---

[1] *Edry v Adelman*, 485 Mich 901 (2009).

## III. ANALYSIS

The first issue to be addressed is whether the trial court abused its discretion by precluding plaintiff's oncology expert from testifying on the issue of proximate causation. The majority opines that plaintiff's expert was properly stricken. I respectfully disagree. I believe that the majority's analysis and conclusion are erroneous because they completely ignore *Clerc* as well as the clear and unambiguous language of MCL 600.2955.

I agree with the majority that the trial court must engage in a preliminary gatekeeping function to determine whether to admit expert testimony. I disagree with the majority on what factors are to be considered when a court makes such a determination. This Court has already addressed this precise issue in *Clerc*, holding that all the § 2955 factors need to be examined before an expert's testimony can be precluded, and it is an abuse of discretion to fail to do so. I see no compelling reason to depart from the clear directive of *Clerc* in the matter before us.

*Clerc* was a medical malpractice case involving lung cancer. The issue presented on appeal was whether the trial court had abused its discretion by striking the plaintiff's expert because the plaintiff had failed to produce scientific literature to support his claim. *Clerc* opined on the proper factors to be evaluated when considering whether to strike expert witness testimony. *Clerc* held that the admissibility of expert testimony is be evaluated under MRE 702, MCL 600.2169, *and MCL 600.2955*. In reversing the trial court's decision to strike the plaintiff's expert witness because it was *an abuse of discretion*, this Court held:

Consistent with this role, the *court "shall" consider all of the factors listed in MCL 600.2955(1).* If applicable, the proponent must also satisfy the requirement of MCL 600.2955(2) to show that a novel methodology or form of scientific evidence has achieved general scientific acceptance among impartial and disinterested experts in the field.

*Here, the trial court did not consider the range of indices of reliability listed in MCL 600.2955. Rather, it focused on its concern that plaintiff could not present specific studies on the growth rate of untreated cancer. Therefore, the court did not fulfill its gatekeeping role because it failed to consider other factors such as, for example, whether the methodology used by plaintiff's experts is "generally accepted within the relevant expert community," is relied upon as a "basis to reach the type of opinion being proffered" by experts in the field, or is "relied upon by experts outside of the context of litigation." MCL 600.2955(1)(e)-(g).*

Accordingly, we remand to the Chippewa Circuit Court to complete the proper inquiry.[2]

I find *Clerc* indistinguishable from the case before us. In *Clerc* the plaintiff argued that studies that the trial court demanded did not exist because no such study had ever been conducted. In the case before us the plaintiff argues that there are no studies with the level of specificity that the trial court demanded. In fact, in the literature submitted by plaintiff, the American Cancer Society discusses Stage IIIC, which is the stage of cancer that plaintiff had, and notes that "survival rates are not yet available for Stage IIIC breast cancer because this stage was defined only a few years ago."[3]

---

[2] *Clerc*, 477 Mich at 1068 (emphasis added).

[3] American Cancer Society, Detailed Guide: Breast Cancer, *How Is Breast Cancer Staged?* (September 18, 2006, revision), reproduced in plaintiff-appellant's appendix, pp 153a-156a, citing AJCC statistics.

In *Clerc* this Court remanded the case to the trial court to consider all the factors enumerated in § 2955 because the presence or absence of scientific studies or literature is not dispositive as it is not the only factor used to evaluate reliability. Other factors are equally important, and medical literature is not going to exist in all circumstances. This same rationale and logic is applicable to this case. This case should be similarly remanded to the trial court to consider all the factors of § 2955 because while there may not be literature to support plaintiff's expert's opinion, there may be another § 2955 factor that provides the necessary indicia of reliability for it.

Section 2955 is specific in its directives. The statute provides:

(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, *the court shall* examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, *and shall consider all of the following factors:*

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

(2) A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.

(3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169. [Emphasis added.]

The well accepted rules of statutory construction apply here. Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature.[4] The Court must interpret the language of a statute in a manner which is consistent with the legislative intent.[5] In determining the legislative intent, we must first look to the actual language of the statute.[6] As far as possible, effect should be given to every phrase, clause, and word in the statute.[7] (Emphasis added.)

Section 2955 states that the court "*shall consider all*" the factors. All of the § 2955 factors must be reviewed to determine if any one of the factors demonstrate an

---

[4] *Potter v McLeary*, 484 Mich 397, 410; 774 NW2d 1 (2009), citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[5] *Potter*, 484 Mich at 411.

[6] *Id*. at 410.

[7] *Sun Valley*, 460 Mich at 237.

indicia of reliability.[8]   Moreover, pursuant to § 2955(2) expert testimony that is considered novel in methodology or form that does not meet the § 2955(1) factors may be admitted into evidence.[9]   The trial court in this matter failed to review all the § 2955(1) factors and failed to consider whether this testimony met the criteria of § 2955(2).  Thus, the trial court failed in its gatekeeping duties and failed to follow the clear mandates of the statute.  Accordingly, remand to the trial court is necessary because the trial court abused its discretion in making its decision.  On remand, the court must consider all the factors in § 2955(1) and (2).  If, after consideration of all the factors, the court finds that plaintiff's expert's opinion does not have the threshold indicia of reliability, the court may preclude the testimony.  Conversely, if there are threshold indicia of reliability, there is no basis to preclude the testimony.

Further, I am troubled by the majority's failure to make clear to the lower courts and litigants that there is a distinction between the proper role of the court as a *gatekeeper*, and the role of the *trier of fact.*  Section 2955 imposes a gatekeeping function; it cannot mandate or permit the court to usurp the role of the trier of fact.  Weighing the credibility of witnesses and determining which expert opinion is more

---

[8] *Clerc*, 477 Mich at 1068.

[9] Section 2955(2) provides:

> A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.

10

persuasive are questions of fact for the jury, not ones to be usurped by the gatekeeping function of the court. The right to a jury trial, when demanded by a party in a civil action, is a constitutionally protected right.[10] This right cannot be usurped by legislative mandates.[11] Determining the credibility of a witness is always a question of fact to be decided by the trier of fact.[12] I decline to interpret the statute in the case before us in a manner contrary to constitutional constraints.

I am also troubled by the lower courts' pejorative references to articles and publications being publicly available on the Internet, as well as the majority's assertion that plaintiff's literature was not peer reviewed. First, the fact that literature can be accessed on the Internet is not an indication that it is unreliable. This Court's opinions are available on a public website. Most published medical articles, studies, and journals are available on publicly accessible websites. It is the source of a publication that must be considered, not whether it is available on line. Two of the articles referred to as "website" literature are from the American Cancer Society. Second, while the majority asserts that plaintiff's literature was not peer reviewed, the statistics quoted in the American Cancer Society literature are from the AJCC, which is a source that both parties and the trial court acknowledged is a reliable source. The AJCC's statistics are peer reviewed by the medical community.

---

[10] Const 1963, art 1, § 14.

[11] *Whitson v Whiteley Poultry Co*, 11 Mich App 598; 162 NW2d 102 (1968).

[12] *Travelers Indemnity Co v Duffin*, 384 Mich 812 (1971).

11

Moreover, I disagree that summary disposition was properly granted. Summary disposition has been granted in this matter without a reference by the trial court to plaintiff's second expert, Dr. Rainna Brazil, who allegedly supports her proximate causation theory. In granting the motion to dismiss, which I can only presume should have been entitled a motion for summary disposition, the trial court never mentioned or discussed Dr. Brazil. Further, the Court of Appeals never addressed Dr. Brazil, and recognized that the basis for the trial court's disposing of the case was not clear. I am unwilling to affirm the trial court's decision to grant summary disposition without an explanation by the trial court of the basis for the ruling. While I recognize that the majority has come to a conclusion regarding the admissibility of Dr. Brazil's testimony, I find it inappropriate to do so absent review of this issue by the trial court or the Court of Appeals. On remand I would direct the trial court to set forth the basis for rejecting Dr. Brazil's testimony so it can be determined if summary disposition was appropriate.

Finally, the majority in this case opines that a reduced chance of survival is not a cognizable injury under MCL 600.2912a(2), citing *Wickens v Oakwood Healthcare Sys*, 465 Mich 53; 631 NW2d 686 (2001). *Wickens* held that the language of § 2912a(2) only allows recovery for injuries that have already been suffered, thus precluding any and all claims for loss of opportunity absent a present injury. I have serious concerns that *Wickens* failed to properly interpret § 2912a(2) and joined in the grant of leave to appeal in this case which asked the parties to brief whether *Wickens* was correctly decided. However, given the majority's holding, I find this issue to be premature and leave the exploration of this important issue to a future date.

## IV.  CONCLUSION

I respectfully dissent from the majority opinion, which holds that the trial court did not abuse its discretion by precluding plaintiff's expert witness's testimony.  In serving in its gatekeeping role, a trial court is required to consider *all* factors enumerated in MCL 600.2955 before it strikes an expert witness, and it is an abuse of discretion for the trial court to fail to do so.  In this case, the trial court reviewed only one § 2955 factor.  The trial court precluded plaintiff's expert from testifying because plaintiff did not present medical articles on the growth rate of cancer in support of her position.  By limiting its inquiry to only one enumerated criterion of MCL 600.2955, the trial court abused its discretion because it failed to consider *all* the indices of reliability in MCL 600.2955.  Because the majority ignores the plain language of MCL 600.2955, which mandates that a trial court review *all* the enumerated factors within § 2955, as well as this Court's clear directive in *Clerc*, I must respectfully dissent.

Accordingly, I would reverse the Court of Appeals judgment and remand this matter to the trial court for further proceedings consistent with this opinion.

WEAVER, J., concurred with HATHAWAY, J.

13